46 F.3d 1127
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Roland C. BRASWELL, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roland C. BRASWELL, Defendant-Appellant.
 Nos. 93-5770, 93-5813.
 United States Court of Appeals, Fourth Circuit.
 Argued May 13, 1994.
Decided Feb. 8, 1995.
 
 ARGUED: John Samuel Bowler, Assistant United States Attorney, Raleigh, NC, for Appellant. Diedra Lynn Whitted, Goldsboro, NC, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Raleigh, NC, for Appellant.
 Before WIDENER and WILKINS, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 ORDER
 WIDENER, Circuit Judge:
 
 
 1
 This is a troubling case. We must decide whether a district court should have granted a motion for judgment of acquittal to a defendant who has been the victim of prosecutorial misconduct before the grand jury. We answer that question in the negative in the circumstances of this case.
 
 
 2
 * Appellant Roland C. Braswell was a Goldsboro, North Carolina attorney who stood accused of helping his clients conceal the profits from their illegal drug trafficking activity through the use of sham corporations and other devices. Two former clients, Canady and Riggs, each of whom had been convicted of drug trafficking crimes, were the main witnesses against him at trial as to the alleged conspiracy.
 
 
 3
 The perjury charges stemmed from Braswell's testimony before the same grand jury investigating the same case. In particular, Braswell testified about documents purporting to be the corporate records of the shell corporations he established for Canady and Riggs. Before the grand jury and at trial, the government presented witnesses who testified that the documents had been recently fabricated. These wit nesses based their conclusions on analyses of the dates of manufacture of the papers and on analyses of indentations on the papers.
 
 
 4
 The grand jury indicted Braswell on 16 counts. Count One charged conspiracy to defraud the United States by impeding the collection of tax in violation of 18 U.S.C. Sec. 371; Counts Two through Seven each charged the misdemeanor crime of willful failure to file a tax return for each year between 1986 and 1991 in violation of 26 U.S.C. Sec. 7203; Counts Eight through Fifteen each charged perjury for separate statements made before the grand jury, relating to the preparation of certain documents in violation of 18 U.S.C. Sec. 1623; and Count Sixteen charged the crime of aiding or assisting the filing of a false tax return in violation of 26 U.S.C. Sec. 7206.
 
 
 5
 On the morning of trial, Braswell pleaded guilty to the six misdemeanor charges (Counts Two through Seven). The trial on the remaining counts then proceeded. At the close of the government's case Braswell made a motion for judgment of acquittal. The district court granted the motion in part and dismissed Counts Nine through Fourteen (6 of the 8 perjury counts) as being duplicative of the same statement. The jury later found Braswell guilty of Counts One, Eight, and Fifteen (the conspiracy and two remaining perjury charges). The jury acquitted Braswell of Count 16 (aiding or assisting a false statement).
 
 
 6
 After trial, Braswell made another motion for judgment of acquittal on the conspiracy and two perjury convictions (Counts One, Eight and Fifteen) based upon misconduct of the prosecutrix before the grand jury. The district court granted the motion as to the two perjury convictions but denied it as to the conspiracy conviction because it found that there was ample evidence to support the conspiracy conviction. The government appealed the district court's grant of judgment of acquittal on the two perjury convictions,[1] and Braswell has appealed the failure of the district court to dismiss all of the indictment and on other grounds.
 
 The Grand Jury Proceedings
 
 7
 The grand jury was in session on the morning of August 19, 1992, and a special Agent with the Internal Revenue Service, Terence O'Brien, was called to testify.[2] Agent O'Brien detailed the investigation of the drug traffickers Canady and Riggs and explained how Braswell had come to his attention. Agent O'Brien described several transactions that involved Braswell's efforts to help Canady and Riggs acquire possessions and property without attracting the attention of the IRS, including the purchase of a boat, the purchase of a farm, and an attempted purchase of a hotel. In addition, Braswell helped obtain a false Form 1099 (an income reporting form used for income tax) in an effort to help Riggs conceal even more of his income.
 
 
 8
 O'Brien then began to describe several meetings he or the United States Attorney's Office had with Braswell, as well as explanations Braswell offered for various incidents and acts. The Assistant United States Attorney guided Agent O'Brien through much of this testimony. Then the Assistant United States Attorney made the following remarks:
 
 
 9
 Q: OKAY. DO YOU WANT TO GO NOW TO THE--TO THE SALE OF THE FARM AND THEN WE'LL GO INTO MR. BRASWELL'S EXPLANATIONS FOR ALL OF THIS?
 
 
 10
 FOREPERSON: EXCUSE ME. DO WE NEED TO TAKE A BREAK?
 
 
 11
 [THE PROSECUTRIX][3]: LET ME ASK YOU ONE--
 
 
 12
 FOREPERSON: YEAH.
 
 
 13
 [THE PROSECUTRIX]:--ONE THING. MR. BRASWELL--WE'VE INVITED HIM TO APPEAR IN FRONT OF THE JURY. SO RIGHT NOW HE MAY BE OUTSIDE WITH HIS ATTORNEY, SO I'D ASK YOU NOT TO MAKE ANY COMMENTS ABOUT ANY OF THIS BECAUSE WE ANTICIPATE THAT MR. BRASWELL MAY PERJURE HIMSELF TODAY IN FRONT OF YOU, AND I WANT HIM TO--US TO HAVE A VERY FRIENDLY ATMOSPHERE IN HERE SO THAT HE FEELS VERY AT EASE IN GIVING HIS EXPLANATIONS FOR THIS TYPE OF THING. AND THEN WE MAY--WE'RE GOING TO HAVE ANOTHER WITNESS COME IN LATER WITH SOME OTHER INFORMATION. IS THERE ANYTHING YOU WANT TO SAY ABOUT THAT--SO I'D ASK YOU TO PLEASE NOT SAY A WORD, BECAUSE I ANTICIPATE THAT THEY'D BE OUT THERE RIGHT NOW.
 
 
 14
 Shortly after the grand jury proceedings resumed, Braswell testified about documents he had voluntarily turned over to the United States Attorney's office. Several of the documents were corporate record and minute books from the shell corporations set up for Canady and Riggs. Braswell's testimony indicated that he had made entries into these books on or about the dates written on the pages (i.e., the years 1985 to 1988).
 
 
 15
 Following Braswell's testimony, a document examiner testified before the grand jury. The document examiner had tested the paper used in the documents turned over by Braswell and concluded that the paper dated from 1991. His indentation analysis also disclosed dates other than that shown on the face of the papers. When the grand jury returned the indictment four weeks later, on September 14, 1992, it included eight perjury charges resulting from Braswell's testimony before the grand jury.
 
 II
 
 16
 Braswell raises several challenges to his conviction of conspiracy: (1) the prosecutor's conduct before the grand jury required the dismissal of the two perjury counts and the conspiracy count[4]; (2) the prosecutor and the district court erred in referring to the crime with which Braswell was charged as money laundering rather than conspiracy to defraud; (3) the jury should have been required to return a special verdict setting forth the overt acts it found in support of the conspiracy conviction; (4) the district court erred in sentencing Braswell under the United States Sentencing Guidelines without finding that an overt act was taken after the effective date of the Guidelines; and (5) the evidence of conspiracy or overt acts after the effective date of the Guidelines was insufficient to sustain the district court's decision to sentence under the Guidelines. The government asserts that the prosecutor's comments did not justify the dismissal of the two perjury counts. In light of our disposition of the case, we address with any particularity only two of the parties' contentions: the claim with respect to the prosecutrix's misconduct before the grand jury and whether the district court erred in not making a specific fact finding on whether an overt act had taken place after the effective date of the Sentencing Guidelines. The other assignments of error are without merit.
 
 
 17
 * On the question of whether the district court's dismissal of Counts Eight and Fifteen can be sustained, the law is clear. In United States v. Mechanik, 475 U.S. 66 (1986), the Supreme Court reversed this circuit's decision to reverse that portion of a conviction which was tainted by the simultaneous presence and in-tandem testimony of two government witnesses before the grand jury. The Supreme Court assumed that the conduct in question violated Rule 6(d) of the Federal Rules of Criminal Procedure, but reasoned that the subsequent conviction by the petit jury rendered any error before the grand jury harmless. The Court relied, in part, on the societal costs of retrials when the error cannot be shown to be other than harmless. 475 U.S. at 72-73.
 
 
 18
 Following Mechanik, the Supreme Court decided Bank of Nova Scotia v. United States, 487 U.S. 250 (1988), in which the Court held that a district court may not invoke its supervisory powers to avoid the harmless error analysis required under Mechanik. Absent a structural defect, see 487 U.S. at 257, which is not present here, a defendant who seeks to have a conviction vacated or an indictment dismissed because of misconduct before the grand jury must " 'establish[ ] that the violation substantially influenced the grand jury's decision to indict' or [that] there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." 487 U.S. at 256 (quoting Mechanik, 475 U.S. at 76 (O'Connor, J. concurring)). Braswell is not able to make the required showing that the error was not harmless. There is no allegation of systemic and pervasive prosecutorial misconduct here that might allow a presumption of prejudice, 487 U.S. at 259, and the petit jury's verdict is conclusive on the propriety of the grand jury's decision to indict, 475 U.S. at 70.[5] In sum, although the prosecutrix may have helped the grand jury indict Braswell, the record does not show that her conduct substantially influenced the decision of the grand jury or placed such influence in grave doubt. 487 U.S. at 263.
 
 
 19
 We base our decision on Mechanik and Bank of Nova Scotia. In Bank of Nova Scotia, the Court considered the following findings of the district court and held that the indictment should not have been dismissed:
 
 
 20
 We are left to consider only the District Court's findings that the prosecutors: (1) fashioned and administered unauthorized "oaths" to IRS agents in violation of Rule 6(c); (2) caused the same IRS agents to "summarize" evidence falsely
 
 
 21
 and to assert incorrectly that all the evidence summarized by them had been presented previously to the grand jury; (3) deliberately berated and mistreated an expert witness for the defense in the presence of some grand jurors; (4) abused its authority by providing "pocket immunity" to 23 grand jury witnesses; and (5) permitted IRS agents to appear in tandem to present evidence to the grand jury in violation of Rule 6(d).
 
 
 22
 487 U.S. at 260.
 
 
 23
 The conduct of the prosecutrix here was lacking, but we cannot say that it was enough to justify legally the dismissal of the indictment in the face of the holding that the conduct of the prosecutors above described in Bank of Nova Scotia was not. Accordingly, the judgment of acquittal on Counts Eight and Fifteen must be reversed. It follows that the denial of the motion for judgment of acquittal on Count One must be affirmed since the defendant's appeal on that count on the same question rested on the same conduct.
 
 
 24
 We do not leave the subject, however, without stating our frustration. Every now and then a district judge is required to take an action which he is bound to know is borderline, but which must be taken or else he turns his courtroom over to the attorneys, in this case, the prosecutrix. This is such a case. The conduct of the prosecutrix before the grand jury in this case was without justification and the fact that we have not sustained the judgment of acquittal does not mean that we approve the conduct. Her seeming invitation to the grand jury to join the prosecution certainly is not worthy of approbation, and it certainly is no help to the office of the U.S. Attorney in which the conduct took place that this might well be an act which could be considered a part of a history of prosecutorial misconduct so as to raise a substantial and serious question about the fundamental fairness of the process which resulted in indictment in some future case. See Bank of Nova Scotia, 487 U.S. at 259.
 
 
 25
 Although our sympathies may be, and are, with the district judge in this case, we are required to and we do reverse the judgment of acquittal on Counts Eight and Fifteen.
 
 III
 
 26
 At sentencing, the district court stated, over Braswell's objection, that because the indictment charged a time period for the conspiracy that extended past the effective date of the Guidelines, there was no need to find the existence of an overt act occurring past that date in order to sentence the defendant pursuant to the Guidelines. This is in conflict with our decisions. See, e.g., United States v. Bakker, 925 F.2d 728, 739 (4th Cir.1991). Although it appears to us that there may well be enough evidence in the record to justify the finding of the existence of an overt act or acts after the effective date of the Guidelines, in light of our decision with respect to Counts Eight and Fifteen, the case must be remanded for resentencing and the sentences imposed on all counts of the indictment must be vacated. At sentencing, the district court will address any argument about overt acts past the effective date of the Guidelines as well as any other matter pertinent to that proceeding.
 
 
 27
 Accordingly, we vacate Braswell's sentences and the district court's grant of judgment of acquittal on Counts Eight and Fifteen, and remand for reinstatement of the convictions and resentencing.
 
 
 28
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 The district court granted a motion for acquittal on the perjury counts. No distinction is made in the briefs between that and a motion to dismiss the indictment
 
 
 [2]
 The Government gave the grand jury transcript to Braswell at trial after Agent O'Brien testified. Braswell then discovered, for the first time, what had occurred before the grand jury. Braswell was doubtless diligent
 
 
 [3]
 The prosecutrix did not appear on appeal either at argument or on the brief
 
 
 [4]
 Braswell makes this assertion in several subsections of his brief. We will consider his allegations in the aggregate. In addition, he argues that the entire indictment, including the misdemeanor tax charges to which he pleaded guilty, should have been dismissed. There is no evidence in the record that Braswell made a motion for judgment of acquittal with respect to the charges to which he pleaded guilty. We therefore do not address this contention and affirm his misdemeanor convictions
 
 
 [5]
 Our decision on the perjury convictions applies equally to the conspiracy conviction